29462. PEKOR-COOK JEWELRY CO. *v.* SCHWARTZ *et al.*

DECIDED JULY 9, 1942. REHEARING DENIED JULY 28, 1942.

*Edward F. Taylor,* for plaintiff. *Hallie B. Bell,* for defendant.

STEPHENS, P. J. · This case arose out of a claim filed by S. Schwartz to personal property which had been levied on under a distress warrant sued out on September 29, 1933, by Pekor-Cook Jewelry Company against Joe Galkin. The levy was made on the same day. The property levied on and which was claimed consisted of a Singer sewing machine, two flat-top desks, and other pieces of personal property which, as recited in the entry of levy, were found in the possession of the defendant.

The issue was tried before a jury in the municipal court of Macon. After the introduction of evidence the court directed a verdict for the plaintiff. The verdict was to the effect that all of the property levied on was subject to the lien of the distress warrant and therefore subject to levy and sale thereunder. The claimant's certiorari,

based on the direction of the verdict, was sustained, the judgment of the trial court was set aside and a new trial was granted. To this judgment the plaintiff excepts.

Besides certain documentary evidence the only evidence introduced was that of the claimant. Whatever construction may be placed on the claimant's testimony as respects the title to any of the property levied on, other than the sewing machine, it appears from the claimant's testimony and the retention-title contract that the claimant sold the sewing machine to the defendant under this contract, that it had been legally recorded before the issuance of the distress warrant, and therefore constituted constructive notice to the plaintiff that at the time of the levy the title to the sewing machine was in the claimant and that the defendant was still indebted therefor in the sum of $85. It appears from the evidence of the claimant that he had loaned the sewing machine to the defendant about three or four months before the levy, and that when the claimant found that levies were being made he sold the defendant the sewing machine for $85 and took from him a retention-title note on September 27, 1933; that he took the "bill of sale" on the property two days before it was levied on, and did so for the purpose of keeping it from being levied on; that this transaction in regard to the sale of the sewing machine was not put on the books. There appeared in evidence the retention-title contract covering the sale of the sewing machine by the claimant to the defendant, which purports on its face to have been executed September 26, 1933, and to have been recorded September 28, 1933. The levy was made on September 29, 1933.

The evidence does not expressly show that the claimant sold the machine and passed title thereto to the defendant before the execution of the retention-title contract and the acquisition of, or retention by, him of title to the property under this contract as security for the debt. The claimant's evidence which is relied on as showing that he had sold the machine to the defendant and passed title thereto by an oral contract or otherwise, before the execution and recording of the retention-title contract is, quoted from the record, as follows: "I loaned Mr. Galkin [the defendant] the Singer sewing machine and motor and attachments about three months ago, but sold them to him before the levy and took retention-title contract on them September 27, 1933, to keep them from being levied

upon." It seems to be a strained construction of this testimony to construe it as meaning, although taking it most strongly against the claimant who delivered it, that he sold the machine before he took the retention-title contract. It seems that the reasonable and proper construction is that the claimant sold the machine by virtue of the retention-title contract and that the sale and the contract constituted one transaction and occurred September 27, 1933. Any construction of this testimony that the sale took place as a separate and distinct transaction from the execution of the retention-title contract, and that it took place before the execution of the contract, seems to be at variance with the unequivocal recitals in the contract covering the sale of the machine. In this contract, which is dated September 26, 1933, and recorded September 28, 1933, it is recited that the defendant has "this day purchased of S. Schwartz the following described personal property:" the property described being the machine.

If the claimant had loaned the machine to the defendant and afterwards had sold it to him under a retention-title contract, executed and duly recorded before the levy of the distress warrant, although the claimant's motive and intention may have been to prevent a levy on the machine, such transaction could not in any way injuriously affect the plaintiff creditor of the defendant. While the machine was in the possession of the defendant as the property of the claimant it could not be subject to the levy. After the claimant had sold the machine to the defendant under a contract retaining title in the claimant as security for the purchase-money, and this contract was duly recorded before the levy, no right of the plaintiff was affected.

Assuming, however, without conceding, that under the proper construction of the testimony of the claimant as quoted above, and construing it most strongly against him, it appears that he sold the machine to the defendant and passed title thereto, that this was a completed transaction, and that afterwards the retention-title contract reserving the title in the claimant as security for the purchase money was executed, it does not appear as a matter of law from the undisputed testimony, giving it the above construction, that the transaction as respects the sale of the machine, which took place before the levy of the distress warrant, although the sale may have been made in so far as the claimant is concerned for the pur-

pose of preventing a levy on the machine, was void as one made to delay or defraud creditors. It is essential to the invalidity of a conveyance of property, as a bill of sale to secure debt to personal property, as one made with the intention to delay or defraud creditors, that the conveyance must be made with the intention of the debtor to delay or defraud creditors and that such intention be known to the party to whom the conveyance is made. Code, § 28-201 (2). There is no evidence whatsoever which would demand a finding, or even authorize one, that the defendant against whom the distress warrant was issued, assuming that when the retention-title contract was executed he was the owner of the machine, executed the contract and thereby vested title in the claimant with any intention whatsoever to delay or defraud the plaintiff or any other creditor of the defendant. The only evidence whatsoever which might be the basis of an inference that the transaction with reference to the machine was one to delay or defraud the plaintiff, or any creditor of the defendant, is found in the testimony of the claimant to the effect that he, without any reference to the defendant, caused the contract to be executed for the purpose of preventing a levy on the machine.

The evidence therefore did not demand a finding that the transaction as respected the sewing machine was void as having been made to delay or defraud a creditor of the defendant. It therefore does not appear conclusively and as a matter of law from the undisputed testimony, construing the claimant's testimony most strongly against him, that the machine was subject to the levy. The judge erred in directing a verdict for the plaintiff, and the superior court did not err in sustaining the certiorari and granting a new trial to the claimant.

*Judgment affirmed. Sutton, J., concurs. Felton, J., dissents.*

FELTON, J., dissenting. Mr. Schwartz testified: "I loaned Mr. Galkin the Singer sewing machine and the motor and attachments about three months ago, but sold them to him before the levy and took retention-title contract on them September 27, 1933, to keep them from being levied upon." Construing this testimony against the party, it means that he sold Galkin the property on open account before September 27, 1933, at which time title passed to Galkin. If the property was on loan on September 27, 1933, Schwartz could have retaken possession before the levy. A reten-

tion-title contract signed thereafter was ineffective to put the title back into Schwartz as security for a debt, irrespectively of the question of its having admittedly been taken to prevent a levy.